**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MANDY PALMUCCI,<br><br>*Plaintiff,*<br><br>vs.<br><br>TWITTER, INC., GOOGLE, LLC, AND<br>FACEBOOK, INC.,<br><br>*Defendants.* | Civil Action No. 1:18-cv-01165<br><br>Hon. John Z. Lee |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................2

ARGUMENT ......................................................................................................................5

I.      Venue Is Proper In Both The Northern District Of California And This District ..............6

II.     Transfer Is In The Interest Of Justice Because It Will Promote Judicial Economy ...........6

        A.      A Transfer Will Avoid Duplicative Litigation And Potentially Inconsistent
                Results In Overlapping Cases ...............................................................................7

        B.      A Transfer Will Place This Case In The District Where Relevant Events
                Took Place And Avoid Docket Congestion ...........................................................11

III.    The Northern District Of California Will Be More Convenient For The Parties
        And Witnesses ............................................................................................................12

IV.     That None Of The Relevant Events Occurred In This District Greatly Diminishes
        Any Weight Afforded Plaintiff's Choice Of Forum ......................................................15

CONCLUSION...................................................................................................................15

## **TABLE OF AUTHORITIES**

Page(s)

### CASES

*Bull v. Ill. Union Ins.*,
  2017 WL 3234374 (N.D. Ill. July 31, 2017)..........................................................2, 7, 12

*Chicago, Rock Island & Pac. R.R. Co. v. Igoe*,
  220 F.2d 299 (7th Cir. 1955) ..........................................................................15

*College Craft Cos., Inc. v. Perry*,
  889 F. Supp. 1052 (N.D. Ill. 1995) ..................................................................6

*Dillon v. Watson Bowman Acme Corp.*,
  2003 WL 22454024 (N.D. Ill. Oct. 27, 2013)...................................................2

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ........................................................................5, 10

*Hecker v. Petco Animal Supplies, Inc.*,
  2017 WL 2461546 (N.D. Ill. June 7, 2017).................................................8, 10, 15

*Harper v. Ill. Dep't of Corr.*,
  2016 WL 3014835 (N.D. Ill. May 26, 2016)....................................................15

*In re Hudson*,
  710 F.3d 716 (7th Cir. 2013) .......................................................................2, 15

*Jaramillo v. DineEquity, Inc.*,
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ........................................................7, 8, 11, 15

*Johnson v. Korte*,
  2017 WL 3720172 (N.D. Ill. Aug. 29, 2017) ..................................................12

*Kjaer Weis v. Kimsaprincess Inc.*,
  2017 WL 4882336 (N.D. Ill. Oct. 30, 2017)...................................................12

*Martinez v. Deutsche Bank AG*,
  2017 WL 1366048 (S.D. Ill. Apr. 12, 2017)....................................................8

*Musial v. Hitachi Home Elecs (Am.), Inc.*,
  2011 WL 2712756 (N.D. Ill. July 12, 2011)..................................................6, 8

*Qurio Holdings, Inc. v. DIRECTV, LLC*,
  2015 WL 1943278 (N.D. Ill. Apr. 29, 2015) ..................................................12

*Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*,
626 F.3d 973 (7th Cir. 2010) ............................................................6, 11, 13

*Rosen v. Spirit Airlines, Inc.*,
152 F. Supp. 3d 1055 (N.D. Ill. 2015) .........................................................11, 12

*Siegel v. HSBC Holdings, PLC*,
2017 WL 3521387 (N.D. Ill. Aug. 24, 2017) ....................................................9

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).........................................................................................1

*Von Holdt v. Husky Injection Molding Sys., Ltd.*,
887 F. Supp. 185 (N.D. Ill. 1995) .................................................................14

*Weber-Stephen Prods., LLC v. Char-Broil, LLC*,
2016 WL 5871505 (N.D. Ill. Oct. 5, 2016).....................................................12

*Wen Prods., Inc. v. Master Leather, Inc.*,
899 F. Supp. 384 (N.D. Ill. 1995) ...................................................................6

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 2333, Anti-Terrorism Act (ATA).............................................. *passim*

18 U.S.C. § 2334(a) ............................................................................................6

28 U.S.C. § 1404(a) ....................................................................................... *passim*

47 U.S.C. § 230, Communications Decency Act..........................................1, 10

Defendants Twitter, Google, and Facebook respectfully request that the Court transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Northern District of California, where two nearly identical actions arising from the same November 13, 2015 terrorist attacks in Paris are pending against Twitter and Google, and where several other very similar actions arising from other terrorist attacks are pending against all three Defendants. The three Paris-related cases involve similarly situated plaintiffs, represented by the same counsel, all asserting claims under the Anti-Terrorism Act ("ATA") based on identical theories of liability. All of these cases are subject to the same central defense—that plaintiffs' claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230—and share the same fatal flaws in the elements of the plaintiffs' affirmative case, including causation under the ATA and state law, as several judges in the Northern District of California already have held.

Section 1404(a) exists to "prevent the waste 'of time, energy, and money' and to 'protect litigants, witnesses, and the public from unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Transferring this case to the Northern District of California, where multiple substantially similar suits are pending, will serve these purposes by allowing coordination of discovery and other proceedings, avoiding the expenditure of unnecessary judicial and party resources, and reducing the likelihood of inconsistent judgments. A transfer also will promote judicial economy because the courts in the Northern District of California have developed familiarity with the applicable law and issues through their handling of these cases—many filed by the same plaintiffs' counsel as here. Indeed, two such cases that were filed in other districts have been transferred to the Northern District of California for this reason, and a third case—initially filed by Plaintiff's counsel in the Central District of California—was voluntarily dismissed and re-filed in the Northern District of California.

The convenience of witnesses and related factors also strongly favor transfer. The relevant United States-based witnesses, evidence, and operative facts will be found overwhelmingly in the Northern District of California, and not in the Northern District of Illinois, where no part of the underlying Paris attacks—or Defendants' alleged conduct—took place and where no Defendant resides. All of the Defendants—whose internal policies and practices Plaintiff challenges—are based in California, and the underlying attack took place overseas. The sole connection between the present action and this judicial district is that the Plaintiff, who sues for emotional distress based on her presence at one of the Paris-attack sites, resides here. As the Seventh Circuit and district courts have held, the plaintiff's residence alone is not enough to prevent a transfer. *See, e.g.*, *In re Hudson*, 710 F.3d 716, 717, 719 (7th Cir. 2013) (no clear error in granting transfer despite plaintiff's argument that "the case should remain in Illinois because he lives here, as do his current treating physicians"). This is especially true where, as here, transferring this case will move it from an inconvenient forum to the location of the majority of the "material events" (*i.e.*, the Defendants' activities) alleged by the Plaintiff. *Dillon v. Watson Bowman Acme Corp.*, 2003 WL 22454024 at *1 (N.D. Ill. Oct. 27, 2013); *accord Bull v. Ill. Union Ins.*, 2017 WL 3234374 at *5 (N.D. Ill. July 31, 2017) (Lee, J.).

## BACKGROUND

Plaintiff's claims arise out of the horrific terrorist attacks in Paris, France in November 2015, carried out by operatives of the Islamic State of Iraq and Syria ("ISIS"). Compl. ¶ 1.[1] Plaintiff alleges that she was present in one of the cafés that was targeted in the attacks and suffered emotional distress when she witnessed others being killed or injured. *Id.* ¶ 503. She

---

[1] For purposes of this motion only, Defendants accept as true the allegations in the complaints in the three cases, as supplemented by declarations submitted with this motion.

seeks damages from Defendants Twitter, Google, and Facebook under the civil remedies provision of the ATA, 18 U.S.C. § 2333, and state law, based on allegations that the Defendants did not take sufficient measures to remove content and/or accounts associated with ISIS members or sympathizers, with the alleged result that ISIS was able to build its power base and, so empowered, to orchestrate terrorist attacks such as the Paris attacks. Compl. ¶¶ 623-663.

In addition to this case, two other nearly identical cases arising from the Paris attacks are currently pending against Defendants Google and Twitter in the Northern District of California, both alleging claims under the ATA and state law for injuries arising out of the Paris attacks. *See* First Am. Compl. ¶¶ 628-663, *Cain v. Twitter, Inc.*, No. 17-cv-2506-JD (N.D. Cal. Apr. 6, 2017), ECF No. 15 ("*Cain* Compl.") (attached as Ex. 1); Third Am. Compl. ¶¶ 558-594, *Gonzalez v. Google, Inc.*, No. 16-cv-3282-DMR (N.D. Cal. Nov. 6, 2017), ECF No. 111 ("*Gonzalez* Compl.") (attached as Ex. 2). Counsel for Plaintiff in the present case also represent the *Cain* and *Gonzalez* plaintiffs, and Defendants Google and Twitter are represented by the same respective counsel here as in the California cases. *See Cain* Compl. at 125; *Gonzalez* Compl. at 1. All claims asserted in this case are asserted in either or both of *Gonzalez* and *Cain*.[2] Underlying each of those claims is the same extremely attenuated theory of liability: Defendants allegedly allowed ISIS members and sympathizers to use their online platforms; this alleged use contributed to the rise of ISIS, allowing it to build power and influence; this power and influence

---

[2] All three cases purport to assert claims for aiding and abetting acts of international terrorism, conspiracy in furtherance of acts of international terrorism, provision of material support to terrorists, and provision of material support to a designated foreign terrorist organization. *See* Compl. ¶¶ 623-650; *Cain* Compl. ¶¶ 628-653; *Gonzalez* Compl. ¶¶ 558-585. This case and *Cain* also include a claim for alleged negligent infliction of emotional distress. *See* Compl. ¶¶ 651-654; *Cain* Compl. ¶¶ 660-663. And this case and *Gonzalez* include claims for alleged concealment of material support and resources to a foreign terrorist organization and for alleged provision of funds, goods, or services to or for the benefit of specially designated global terrorists. *See* Compl. ¶¶ 655-663; *Gonzalez* Compl. ¶¶ 586-594.

enabled ISIS to commit, or inspire others to commit, terrorist attacks, including the Paris attacks; and the plaintiffs were injured (or suffered emotional distress) in the course of that attack. *See* Compl. ¶¶ 509-563, 587-663; *Cain* Compl. ¶¶ 533-583, 596-663; *Gonzalez* Compl. ¶¶ 482-541, 554-594. Because all three complaints press the same theory of liability based on injuries arising out of the same terrorist attacks, the factual allegations in all three complaints are in many instances virtually identical, *e.g.*, Compl. ¶¶ 432-462; *Cain* Compl. ¶¶ 422-452; *Gonzalez* Compl. ¶¶ 405-435, or at least substantially similar, *e.g.*, Compl. ¶¶ 67-497; *Cain* Compl. ¶¶ 74-300, 412-456; *Gonzalez* Compl. ¶¶ 82-470.

Significantly, although both *Cain* and *Gonzalez* currently are pending in the Northern District of California, where Twitter, Google, and Facebook are all headquartered, Compl. ¶¶ 34-36, *Cain* initially was filed in the Southern District of New York. On April 25, 2017, Judge Crotty granted Twitter's motion to transfer *Cain* to the Northern District of California. Opinion and Order, *Cain v. Twitter, Inc.*, No. 17-cv-122 (S.D.N.Y. Apr. 25, 2017), ECF No. 23 ("*Cain* Transfer Order") (attached as Ex. 3). In so doing, the court found that "the locus of the operative facts" was "in California, not New York," that "there will be significant factual overlap in the two actions, such as factual development relating to ISIS and the Paris Attack," and that "[l]egal questions, including the defenses that Google and Twitter will likely assert, almost completely overlap." *Cain* Transfer Order at 6, 8. As a result, a change of venue was appropriate because it will "undoubtedly be more efficient for one court to hear both actions instead of two courts." *Id.* Both *Cain* and *Gonzalez* have been pending in the Northern District of California since that time, although the cases are not formally designated as related. The court's reasoning in *Cain* weighs strongly in favor of transferring the present case as well.

Also weighing in favor of a transfer is the fact that this action closely resembles seven

other cases pending in the Northern District of California or on appeal in the Ninth Circuit, all of which assert nearly identical theories under the ATA and state law arising from other attacks.[3] Indeed, one of the cases, *Megalla*, was recently transferred by consent of the parties from the Central District of California to the Northern District of California in light of the pendency of another action there arising from the same San Bernardino terrorist shooting—even though, unlike in this case, the attack at issue in *Megalla* actually took place in the transferor district. *See* Order Granting Stipulation to Transfer, *Megalla v. Twitter, Inc.*, No. 17-cv-2404 (C.D. Cal. Jan. 23, 2018), ECF No. 24 (attached as Ex. 4); *see also Megalla* Compl. ¶ 1. The same rationale—to have closely related cases administered in the same district—applies here.

## ARGUMENT

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …" 28 U.S.C. § 1404(a). A transfer is warranted under 28 U.S.C. § 1404(a) if: (1) venue is proper in the original (transferor) district; (2) venue is proper in the transferee district; and (3) the transferee district is more convenient for both the parties and

---

[3] *Taamneh v. Twitter, Inc.* ¶¶ 489-526, No. 17-cv-4107 (N.D. Cal. July 20, 2017), ECF No. 1 ("*Taamneh* Compl.") (attack by ISIS operatives on nightclub in Istanbul, Turkey); *Sinclair v. Twitter, Inc.* ¶¶ 495-532, No. 17-cv-5710 (N.D. Cal. Oct. 4, 2017), ECF No. 1 ("*Sinclair* Compl.") (ISIS-related terrorist attack in Barcelona, Spain); *Copeland v. Twitter, Inc.* ¶¶ 523-560, No. 17-cv-5851 (N.D. Cal. Oct. 12, 2017), ECF No. 1 ("*Copeland* Compl.") (ISIS-related terrorist attack in Nice, France); *Clayborn v. Twitter, Inc.* ¶¶ 228-267, No. 17-cv-6894 (N.D. Cal. Dec. 13, 2017), ECF No. 5 ("*Clayborn* Compl.") (ISIS-related terrorist shooting in San Bernardino, California); and *Megalla v. Twitter, Inc.* ¶¶ 185-218, No. 18-cv-543 (N.D. Cal. Nov. 30, 2017), ECF No. 1 ("*Megalla* Compl.") (same); *see also Fields v. Twitter, Inc.* ¶¶ 84-91, No. 16-cv-213 (N.D. Cal. Jan. 13, 2016), ECF No. 48 ("*Fields* Compl."), *dismissal aff'd by* 881 F.3d 739 (9th Cir. 2018) (petition for reh'g pending) (claimed ISIS attack in Amman, Jordan); *Pennie v. Twitter, Inc.* ¶¶ 156-187, No. 17-cv-230 (N.D. Cal. June 9, 2017), ECF No. 41 ("*Pennie* Compl.") (currently on appeal in the Ninth Circuit) (claimed terrorism in connection with shooting of police officers in Dallas).

the witnesses and will serve the interest of justice. *College Craft Cos., Inc. v. Perry*, 889 F.

Supp. 1052, 1054 (N.D. Ill. 1995). Each of these factors is satisfied here.

## I.      Venue Is Proper In Both The Northern District Of California And This District

It is beyond dispute that venue will be proper in the Northern District of California under

the venue provision that applies to Plaintiff's ATA claims, because all three Defendants have

their corporate headquarters in that district (Compl. ¶¶ 34-36) and therefore "reside" there. *See*

18 U.S.C. § 2334(a) (venue provision for claims brought under 18 U.S.C. § 2333). Indeed,

counsel representing the Plaintiff in this case previously alleged that venue was proper in the

Northern District of California when they brought claims against Defendants in that district

arising out of the same Paris terrorist attacks. *See* Compl. ¶ 14, *Gonzalez v. Twitter, Inc., Google*

*Inc., & Facebook, Inc.*, No. 16-cv-3282 (N.D. Cal. June 14, 2016), ECF No. 1. Defendants also

do not dispute that venue appears to be proper in the Northern District of Illinois based on

Plaintiff's residence here. Compl. ¶ 39. The transfer question thus turns on whether transfer to

the Northern District of California will serve the interest of justice and the convenience of the

parties and witnesses.

## II.     A Transfer Is In The Interest Of Justice Because It Will Promote Judicial Economy

The "interest of justice" requirement often is "determinative" of whether a case should be

transferred. *Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 978

(7th Cir. 2010). Indeed, even where the original forum is more convenient for the parties and

witnesses, which is not the case here (*see infra* pp. 12-15), courts in this District have found that

"transfer still would be appropriate" if it is "in the interest of justice." *E.g.*, *Musial v. Hitachi*

*Home Elecs (Am.), Inc.*, 2011 WL 2712756 at *3 (N.D. Ill. July 12, 2011) (collecting cases).

The "interest of justice" inquiry "relates to the efficient administration of the court

system, rather than the private consideration of the litigants." *Wen Prods., Inc. v. Master*

*Leather, Inc.*, 899 F. Supp. 384, 386 (N.D. Ill. 1995).  Relevant factors include the desirability of adjudicating related litigation in the same forum, the court's familiarity with the applicable law, the relationship of the community to the underlying events, and the ability to ensure a speedy trial.  *See Bull*, 2017 WL 3234374 at *2; *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009).  Each of these factors strongly favors a transfer here.

### A. A Transfer Will Avoid Duplicative Litigation And Potentially Inconsistent Results In Overlapping Cases

First, and most significantly, virtually all of the factual and legal issues in this case are already being litigated in the Northern District of California—a fact that "weighs heavily" in favor of transfer.  *Jaramillo*, 664 F. Supp. 2d at 916-917.  This case arises out of the November 2015 terrorist attacks in Paris, France—the same attacks at issue in both *Cain* and *Gonzalez*.  *See* Compl. ¶ 319; *Cain* Compl. ¶ 1; *Gonzalez* Compl. ¶ 1.  In all three cases, victims of the Paris attacks are represented by the same attorneys and assert claims under the civil remedies provision of the ATA, 18 U.S.C. § 2333, based on the same theories of liability.  Two of the three Defendants in this case—Twitter and Google—also are defendants in the *Cain* and *Gonzalez* actions, represented respectively by the same counsel who represent them here.  And Defendants have raised, or will raise, many of the same, if not identical, defenses.  If these cases were to proceed beyond the motion to dismiss stage, any factual issues that would need to be discovered would be virtually identical, including, most significantly, steps that Defendants have taken to block ISIS members and sympathizers from their platforms, any knowledge that Defendants' employees may have had about such persons' alleged use of their platforms, and whether Defendants' actions proximately caused the Paris attacks.

Courts regularly recognize that the existence of a first-filed related case in the transferee district significantly favors transfer, as "1404(a) was designed to prevent the situation in which

two cases involving precisely the same issues are simultaneously pending in different District Courts." *Jaramillo*, 664 F. Supp. 2d at 916 (internal citation omitted). In *Hecker v. Petco Animal Supplies, Inc.*, for example, this Court found that transfer was appropriate where a similar suit, involving different causes of action but the same "factual basis and legal theory," had been filed against the same defendant by the same plaintiffs' attorneys (though a different plaintiff) in the Southern District of California. 2017 WL 2461546 at *1, *6 (N.D. Ill. June 7, 2017). The case filed in Illinois, the Court observed, would "likely entail significant discovery that is duplicative of [the case filed in California]," *id.* at *5, and both cases would require consideration of "the same core issue," *id.* at *6. Because "[i]t would be inefficient to litigate [these issues] simultaneously in two forums, which could produce inconsistent results," the existence of the earlier and substantially similar case "strongly weigh[ed]" in favor of transfer. *Id.* at *6. Likewise, in *Jaramillo*, the court found transfer appropriate where the "factual allegations giving rise to [the] claims" were "substantially the same" and the defenses likely to be raised were identical to a separate suit pending in the District of Kansas. 664 F. Supp. 2d at 912. "[A]llow[ing] two different courts to hear nearly identical motions" raising those defenses "would go against the public's interest in judicial economy" and would create a risk that "if either party decides to appeal a decision, two different circuit courts would be required to decide the same issues for the same parties." *Id.* at 916; *see also Musial*, 2011 WL 2712756 at *2 (granting transfer because earlier case involving same underlying facts had been brought against same defendants by same plaintiffs' attorneys (though different plaintiffs) in transferee district).

Similar concerns have led courts to transfer ATA actions that, like this case, allege similar claims based on the same underlying attacks as earlier-filed cases pending in different districts. In *Martinez v. Deutsche Bank AG*, the court found transfer appropriate because a

8

"nearly identical" suit asserting ATA claims was pending in the Eastern District of New York involving all but one of the same defendants, as well as the same factual allegations, including allegations relating to some of the same attacks. 2017 WL 1366048 at *5 (S.D. Ill. Apr. 12, 2017) (overlap in claims, allegations, and defendants "heavily weigh[ed] in favor of transfer"). The court in *Siegel v. HSBC Holdings, PLC*, likewise found that a transfer would serve "the efficient administration of justice" because one defendant was "currently embroiled in multi-district litigation in the Southern District of New York, involving allegations similar to those presented [in *Siegel*]." 2017 WL 3521387 at *7 (N.D. Ill. Aug. 24, 2017). And Judge Crotty in *Cain* granted Twitter's transfer motion based on the "significant factual overlap" between *Cain* and *Gonzalez*, and the fact that "[l]egal questions, including the defenses that Google and Twitter likely [would] assert, almost completely overlap." *Cain* Transfer Order at 6. As the court noted: "A court hearing either this or the California Action [*Gonzalez*] will have to understand and make decisions about the legal effects of Google and Twitter's services, and it would undoubtedly be more efficient for one court to hear both actions instead of two courts." *Id.*

In fact, the Northern District of California is already handling *seven other* pending or recently dismissed actions involving substantially similar theories of liability under the civil remedy provision of the ATA and state law, asserted against these same Defendants for alleged harms associated with other attacks. *Compare Fields* Compl. ¶¶ 84-91; *Pennie* Compl. ¶¶ 156-187; *Taamneh* Compl. ¶¶ 489-526; *Sinclair* Compl. ¶¶ 495-532; *Copeland* Compl. ¶¶ 523-560; *Clayborn* Compl. ¶¶ 228-267; and *Megalla* Compl. ¶¶ ¶¶ 185-218. Plaintiff's counsel here represent the plaintiffs in five of those other actions. Twitter is a defendant in all seven actions, and Google and Facebook are also Defendants in all but one of them. Notably, two of those cases—*Clayborn* and *Megalla*—arise from the same terrorist incident (a mass shooting in San

Bernardino), and were both originally filed in the Central District of California. Even though those two cases arose from a terrorist attack that occurred in San Bernardino, within the Central District of California, the plaintiffs in both actions agreed that the cases should proceed in the Northern District, where several similar cases already were pending and where all three Defendants are domiciled. The *Megalla* plaintiffs stipulated to a voluntary transfer to the Northern District of California after the *Clayborn* plaintiffs—represented by Plaintiff's counsel here—voluntarily dismissed and refiled in the Northern District of California. *See Clayborn v. Twitter, Inc.*, No. 17-cv-3344 (C.D. Cal. Dec. 1, 2017), ECF No. 56; *Megalla v. Twitter, Inc.*, No. 17-cv-2404 (C.D. Cal. Jan. 19, 2018), ECF No. 18.

Plaintiffs' claims in these various actions also suffer from the same fatal flaws and are subject to the same defenses. Defendants have successfully argued that Section 230 bars all of plaintiffs' claims because they seek to hold online service providers liable for harms allegedly arising from third-parties' use of the Defendants' services. And plaintiffs also fail to support the essential elements of their claims, including the requirement that they establish a cognizable causal connection between the defendants' platforms and their injuries. The district courts in *Fields* and *Pennie* dismissed plaintiffs' actions on precisely these grounds. The Ninth Circuit affirmed the *Fields* dismissal on causation grounds without reaching Section 230, and plaintiffs' appeal in *Pennie* is currently pending. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 750 (9th Cir. 2018); *Pennie v. Twitter, Inc.*, No. 17-17536 (9th Cir. filed Dec. 26, 2017). The remaining cases—many of which were stayed pending the Ninth Circuit's decision in *Fields*—all are either awaiting decision on pending motions to dismiss or will proceed with motions to dismiss after the mandate issues in *Fields*. As a result, the Northern District of California has a strong "familiarity with the relevant law," *Hecker*, 2017 WL 2461546 at *4, a factor that supports a

transfer here. *See Jaramillo*, 664 F. Supp. 2d at 917 (granting transfer where the transferee court was "intimately familiar with NLEA preemption of state law claims and so could more efficiently determine whether or not the Illinois action [was] also preempted").

Indeed, without a transfer, each of the numerous factual and legal issues raised in this lawsuit would be litigated in different district courts with potential appeals to different circuits, duplicating judicial efforts and creating a risk of conflicting decisions, not to mention wasting judicial resources when the Northern District of California and Ninth Circuit have already developed significant experience resolving these types of cases. A transfer, by contrast, will allow courts in the same district to "coordinate or consolidate the cases to the extent [they] deem[] appropriate to shepherd them to an efficient resolution," *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1064 (N.D. Ill. 2015), ensuring more efficient administration of justice.

### B. A Transfer Will Place This Case In The District Where Relevant Events Took Place And Avoid Docket Congestion

A transfer will serve the interests of justice for additional reasons as well. *First*, the connection between this case and the Northern District of California is far stronger than any connection this case has to the Northern District of Illinois. *See Research Automation*, 626 F.3d at 978 (interest of justice depends on the "relationship of each community to the controversy"). No portion of the events alleged in the Complaint took place in the Northern District of Illinois. The underlying terrorist incident took place in Paris, France, and allegedly was planned entirely overseas. The only references to this district in Plaintiff's complaint are that Plaintiff resides here, Compl. ¶ 39, and that the Defendants allegedly "may be found" here, *id.* ¶ 37. In contrast, all Defendants are headquartered and reside in the Northern District of California, and Plaintiff's main allegations against Defendants concern conduct (Defendants' operation of their respective online platforms) that occurred in the Northern District of California, not in the Northern District

of Illinois, and that already has been placed at issue in the other California cases. *See* Compl. ¶¶ 185-318, 506-613; Ex. 5, Decl. of Rachel Noble ("Noble Decl.") ¶¶ 6-7; Ex. 6, Decl. of Sophie Bromberg ("Bromberg Decl.") ¶¶ 6-9, 10-13; Ex. 7, Decl. of Michael Duffey ("Duffey Decl.") ¶¶ 4; Ex. 8, Decl. of Patrick J. Carome ¶¶ 4-5 ("Carome Decl."); *accord Rosen*, 152 F. Supp. 3d at 1060 (transferee district had greater relationship to dispute where defendant's headquarters was in transferee district and plaintiff's complaint focused on "corporate decisions made by defendant in its headquarters"). Transferring this case "'closer to the action'" will "more efficiently" advance "the administration of justice." *Weber-Stephen Prods., LLC v. Char-Broil, LLC*, 2016 WL 5871505 at *5 (N.D. Ill. Oct. 5, 2016).

*Second*, federal court management statistics indicate that there is less docket congestion in the Northern District of California than in this District. For the 12-month period ending December 31, 2017, the median wait time from the filing of a civil case to trial was 34.9 months in the Northern District of Illinois, but only 26.7 months in the Northern District of California.[4] Courts in this district (including this Court) have weighed this type of statistical evidence in favor of a transfer. *See Bull*, 2017 WL 3234374 at *6; *Johnson v. Korte*, 2017 WL 3720172 at *4 (N.D. Ill. Aug. 29, 2017) (Lee, J.); *Qurio Holdings, Inc. v. DIRECTV, LLC*, 2015 WL 1943278, at *6 (N.D. Ill. Apr. 29, 2015) (Lee, J.); *Kjaer Weis v. Kimsaprincess Inc.*, 2017 WL 4882336 at *7 (N.D. Ill. Oct. 30, 2017); *Weber-Stephen Prods. LLC*, 2016 WL 5871505 at *5.

## III.   The Northern District Of California Will Be More Convenient For The Parties And Witnesses

Another important factor for purposes of §1404(a) is the convenience of the parties. In assessing this factor, courts "generally consider the availability of and access to witnesses, and

---

[4] *See* U.S. District Courts, *Federal Case Management Statistics—Comparison Within Circuit—During the 12-Month Period Ending December 31, 2017*, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2017.pdf.

each party's access to and distance from resources in each forum." *Research Automation,* 626

F.3d at 978. "Other related factors include the location of material events and the relative ease of

access to sources of proof." *Id.* These factors also counsel in favor of transfer here.

Although the parties have not yet identified witnesses who would likely testify if this case

proceeds past the motion to dismiss stage, it is clear from the Complaint that the witnesses,

evidence, and operative facts relevant to Plaintiff's claims will overwhelmingly be found in the

Northern District of California (or abroad) and not in Illinois. Plaintiff's theory is that

Defendants allegedly failed to block ISIS members and sympathizers from using Defendants'

online platforms to spread hateful messages, recruit members, and otherwise support ISIS's

objectives, thereby providing material support to, aiding and abetting, and conspiring with

international terrorists. Compl. ¶¶ 509-563; 587-613; 623-663. This alleged "support," Plaintiff

claims, allowed ISIS to build its power base and, so empowered, to orchestrate terrorist attacks

such as the Paris attack at which Plaintiff was present. *Id.* ¶¶ 640, 649, 658, 662. Accordingly,

Plaintiff's case, if it were to survive early motions practice, necessarily would focus in

significant part on practices and policies employed by Defendants regarding the management of

content and users on their platforms during the relevant period. Carome Decl. ¶¶ 4-5.

Those practices and policies were developed in California. Each of the Defendants has

rules that prohibit users of their social media platforms from posting content that threatens or

promotes terrorism. *See* Noble Decl. ¶ 5; Bromberg Decl. ¶ 10; Duffey Decl. ¶ 4. These rules

were designed and approved at Defendants' California headquarters. Noble Decl. ¶ 6; Bromberg

Decl. ¶ 11; Duffey Decl. ¶ 4. Each of the Defendants also employed individuals who were

responsible for determining the specific types of online content that would be barred under

Defendants' rules, for formulating policies and strategies regarding how the Defendants' rules

13

would be enforced, for setting policies concerning the suspension of accounts when the accounts posted barred content, and for conducting quality assurance to confirm that the rules and policies were being implemented.  Noble Decl. ¶ 6; Bromberg Decl. ¶ 12; Duffey Decl. ¶¶ 4-5.  The U.S.-based employees who respectively handled these matters for Twitter were all based in Twitter's California offices.  Noble Decl. ¶ 6.  Likewise, the employees who handled these matters for Google/YouTube were all based in YouTube's California offices.  Bromberg Decl. ¶¶ 11-12.  And the majority of U.S.-based Facebook employees responsible for developing Facebook's terrorism content policies and procedures are based at Facebook's headquarters in the Northern District of California.  Duffey Decl. ¶ 4.  Defendants did not employ individuals in the Northern District of Illinois who worked on these matters.  Noble Decl. ¶ 11; Bromberg Decl. ¶ 15-17; Duffey Decl. ¶ 6.

The strong connection to the Northern District of California, and limited connection to the Northern District of Illinois, are true as well for the individuals affiliated with Defendants (i.e., prospective witnesses) whom Plaintiff mentions by name in the Complaint.  None of the identified employees or former employees resides in Illinois.  The three current or former employees of Twitter identified in the Complaint (*see* Compl. ¶¶ 588-590) currently reside in Washington, D.C., Maine, or California.  Noble Decl. ¶¶ 12-13.  The one Google employee identified (Compl. ¶ 523) works in Google's Mountain View, California offices.  Bromberg Decl. ¶ 18.   And no Facebook employee or former employee is identified in the Complaint.  The individuals identified in the complaint as "experts"—*see* Compl. ¶¶ 195, 201, 586, 591—likewise appear to reside outside this district.  *See* Carome Decl. ¶ 3.

In short, the fact that Plaintiff is a resident of this District is not enough to overcome other factors that make transfer appropriate.  *Von Holdt v. Husky Injection Molding Sys., Ltd.*,

887 F. Supp. 185, 190 (N.D. Ill. 1995) (finding that "[a]lthough it would be inconvenient for the plaintiffs [who reside in this District] to [litigate] the action in Massachusetts, it does not outweigh the inconvenience of the defendants."). This Court previously decided as much in *Hecker*, where it granted defendants' motion to transfer venue even though the plaintiff resided here. 2017 WL 2461546 at *4.

## IV. That None Of The Relevant Events Occurred In This District Greatly Diminishes Any Weight Afforded Plaintiff's Choice Of Forum

Finally, Plaintiff's choice of forum does not preclude transfer in this case. As the Seventh Circuit has held, a plaintiff's choice of forum has "minimal value" where, as here, "none of the conduct complained of occurred in the forum selected by the plaintiff." *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *see also Harper v. Ill. Dep't of Corr.*, 2016 WL 3014835 at *3 (N.D. Ill. May 26, 2016) (Lee, J.) (plaintiff's "choice of forum is entitled to little deference" where "[n]one of the events underlying his claims took place here"); *Jaramillo*, 664 F. Supp. 2d at 914 (plaintiff's choice of forum is given less deference "when another forum has a stronger relationship to the dispute"). Here, as explained above, Plaintiff's chosen forum has no connection to the material events in this case. *See supra* pp. 13-14. Plaintiff's choice of forum, therefore, is not enough to justify keeping this case in this District, where multiple other factors strongly favor a transfer. *See In re Hudson*, 710 F.3d at 719 (affirming district court decision granting transfer even where plaintiff filed suit in home district, where more than two thirds of the potential witnesses lived in or near the transferee district, the relevant events occurred there, and the transferee district had less docket congestion).

### CONCLUSION

For these reasons, this Court should grant Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California.

March 5, 2018                           Respectfully submitted,

/s/ Brian M. Willen (w/ consent)        By: /s/ Patrick J. Carome
BRIAN M. WILLEN (*pro hac vice*)            PATRICK J. CAROME (*pro hac vice*)
bwillen@wsgr.com                            patrick.carome@wilmerhale.com
WILSON SONSINI                              ARI HOLTZBLATT (*pro hac vice*)
   GOODRICH & ROSATI, P.C.                  ari.holtzblatt@wilmerhale.com
1301 Avenue of the Americas                 WILMER CUTLER PICKERING
New York, NY 10019                             HALE AND DORR LLP
Telephone:  (212) 999-5800                  1875 Pennsylvania Avenue NW
Facsimile:  (212) 999-5899                  Washington, D.C. 20006
                                            Telephone:  (202) 663-6000
LAUREN GALLO WHITE (*pro hac vice*)         Facsimile:   (202) 663-6363
lwhite@wsgr.com
WILSON SONSINI                              RONALD S. SAFER
   GOODRICH & ROSATI, P.C.                  rsafer@rshc-law.com
650 Page Mill Road                          RILEY SAFER HOLMES & CANCILA LLP
Palo Alto, CA 94304                         Three First National Plaza
Telephone:  (650) 493-9300                  70 West Madison Street, Suite 2900
Facsimile:  (650) 565-5100                  Chicago, IL 60602
                                            Telephone:  (312) 471-8736
DEBRA BERNARD                               Facsimile:   (312) 471-8701
dbernard@perkinscoie.com
PERKINS COIE LLP                            ***Attorneys for Defendant***
131 S. Dearborn Street, Suite 1700         **TWITTER, INC.**
Chicago, IL 60603
Telephone:  (312) 324-8559                  /s/ Kristin A. Linsley (w/ consent)
Facsimile:  (312) 324-9559                      KRISTIN A. LINSLEY (*pro hac vice pending*)
                                            klinsley@gibsondunn.com
***Attorneys for Defendant***               JOSEPH C. HANSEN (*pro hac vice*
**GOOGLE LLC**                              *forthcoming*)
                                            jhansen@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            555 Mission Street, Suite 3000
                                            San Francisco, CA 94105
                                            Telephone:  (415) 393-8200
                                            Facsimile:   (415) 393-8306

                                            ***Attorneys for Defendant***
                                            **FACEBOOK, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2018, I caused the foregoing Memorandum in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a), and accompanying papers, to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

 /s/ Patrick J. Carome      
Patrick J. Carome
